BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
PATRICIA N. SYVERSON (CA SBN 203111)
MANFRED P. MUECKE (CA SBN 222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN (*To Be Admitted Pro Hac Vice*)
CARRIE A. LALIBERTE (*To Be Admitted Pro Hac Vice*)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

*Attorneys for Plaintiff*
*Additional Attorneys on Signature Page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN STECKLER, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PEPSICO, INC., a North Carolina Corporation and THE QUAKER OATS COMPANY, INC., a New Jersey Corporation,<br><br>Defendants. | Case No.: 2:18-cv-9211<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; and<br>2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*<br><br>DEMAND FOR JURY TRIAL |

Class Action Complaint

Plaintiff Morgan Steckler brings this action on behalf of himself and all others similarly situated against Defendants PepsiCo, Inc. and The Quaker Oats Company, Inc. and states:

**FACTUAL ALLEGATIONS**

1. Defendants manufacture, market, sell, and distribute various food products under the Quaker Oats brand. This lawsuit concerns seventeen of those products: (1) Quaker Dinosaur Eggs – Brown Sugar Instant Oatmeal; (2) Quaker Steel Cut Oats; (3) Quaker Old Fashioned Oats; (4) Quaker Simply Granola Oats, Honey, Raisins & Almonds; (5) Quaker Instant Oatmeal, Cinnamon & Spice; (6) Quaker Instant Oatmeal, Apples & Cinnamon; (7) Quaker Real Medleys Super Grains Banana Walnut; (8) Quaker Overnight Oats, Raisin, Walnut & Honey Heaven; (9) Quaker Overnight Oats Unsweetened with Chia Seeds; (10) Quaker Oatmeal Squares, Brown Sugar; (11) Quaker Oatmeal Squares, Honey Nut; (12) Quaker Simply Granola Oats, Honey & Almonds; (13) Quaker Breakfast Flats Crispy Snack Bars, Cranberry Almond; (14) Quaker Chewy Chocolate Chip; (15) Quaker Chewy S'mores; (16) Quaker Breakfast Squares Soft Baked Bars, Peanut Butter; and (17) Quaker Chewy Peanut Butter Chocolate Chip (the "Products").[1]

2. In marketing the Products, Defendants seek to appeal to the consuming public's ever-growing health consciousness and increasing appetite for nutritious, wholesome foods that will benefit their health and avoidance of highly-processed foods with non-healthy attributes such as GMOs, artificial additives, gluten, added sugars, and hydrogenated oils.

3. Defendants make several detailed representations about the health attributes of the Products on the front of the Product packages. For example, Defendants represent on the front of the Old Fashioned Oats Product that the Product

---

[1] Plaintiff reserves the right to add additional products upon completion of discovery.

Class Action Complaint

is "100% Whole Grain" and verified "NON GMO", that it provides "Lasting Energy" and a "Good source of fiber to help support a healthy digestive system", and that it "can help reduce cholesterol", and "may reduce the risk of heart disease". Similarly, the front of the Quaker Steel Cut Oats Product states that the Product contains "HEARTY 100% WHOLE GRAIN OATS", is a "Good source of fiber to help support a healthy digestive system", "can help reduce cholesterol", "may reduce the risk of heart disease", is "Non GMO verified", and provides "lasting energy". Defendants make one or more similar attribute representations on the front of the other Product packages. These representations are collectively referred to as the "Product Health Representations".

4. The Product Health Representations lead reasonable consumers to believe the Products will foster their "good health" and not pose a safety risk to or potentially harm their health.

5. However, recent testing by the Environmental Working Group (EWG), a nonprofit organization dedicated to protecting human health and the environment, revealed that Defendants' Products contain glyphosate, with Quaker Old Fashioned Oats having the highest levels of the 45 products tested. EWG's Children's Health Initiative, "Breakfast With a Dose of Roundup?" August 15, 2018, *available at* https://www.ewg.org/childrenshealth/glyphosateincereal/#.W3TTbPZFw2w ("EWG") (last visited August 23, 2018); *see also* EWG, "Roundup for Breakfast, Part 2: In New Tests, Weed Killer Found in All Kids' Cereals Sampled." October 24, 2018, available at https://www.ewg.org/release/roundup-breakfast-part-2-new-tests-weed-killer-found-all-kids-cereals-sampled ("EWG 2") (last visited October 26, 2018). Glyphosate is one of the most widely used weed killing poisons in the United States. EWG. Each year, more than 250 million pounds of glyphosate is sprayed on American crops, including wheat, barley, and oats just before they are harvested. *Id.* Glyphosate adheres to the crops and Defendants' cleansing process fails to remove

- 2 -
Class Action Complaint

the glyphosate residue.

6. The International Agency for Research on Cancer, part of the World Health Organization, has determined that glyphosate is "probably carcinogenic to humans". IARC Monographs Volume 112: evaluation of five organophosphate insecticides and herbicides, March 20, 2015, *available at* http://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf (last visited August 23, 2018). Glyphosate is even more dangerous for children, who are more susceptible to carcinogens. *See EWG.*

7. Because it is a probable carcinogen with no nutritional value, the presence of *any* amount of glyphosate in the Products, no matter whether above or below regulatory limits, is material to reasonable consumers. No reasonable consumer would purchase the Products knowing that they contained glyphosate.

8. Even though Defendants knew that the Products contain the probable carcinogen glyphosate or, at a minimum, that they could not guarantee the Products did not contain glyphosate given its wide use as a pesticide, Defendants do not disclose this information on the front of the Product labels, choosing instead to specifically identify only the healthy attributes of the Products. Nor do Defendants include this information on the back or sides of the packages, where more detailed Product information is generally found, instead choosing to repeat and reinforce the Health Representations identified on the front of the packages. In fact, nowhere on the Product packages – inside or out – do Defendants disclose that the Products contain or likely contain glyphosate, such that Defendants' Product Health Representations are false, deceptive, or, at a minimum, misleading half-truths.

9. As the manufacturers and distributors of the Products, Defendants knew that the Products contained or likely contained glyphosate. By contrast, Plaintiff and consumers did not and do not have access to such information. Nor is that fact easily discovered by Plaintiff and consumers before purchase of the Products. Because

Defendants had knowledge that the Products contain or likely contain glyphosate, and Plaintiff and consumers did not, Defendants had a duty to disclose that fact—and that glyphosate is a probable carcinogen—to consumers. Defendants did not disclose these material facts.

10. Consumers have a reasonable expectation that material product information, such as the presence of a probable carcinogen like glyphosate, will be provided by a product manufacturer, especially when the manufacturer prominently features and affirmatively identifies the health-related attributes of the Products such as "Whole Grain", "Non GMO verified", "can help reduce cholesterol", and "may help reduce the risk of heart disease." By only identifying the health attributes of the Products and failing to disclose that the Products contain or likely contain glyphosate and glyphosate is a probable carcinogen, Defendants actively concealed this information from Plaintiff, Class members, and the general public. *See* representative Product labels, attached hereto as Exhibit A.

11. Defendants had a duty to disclose that the Products contain or likely contain glyphosate and that glyphosate is a probable carcinogen, which was known to Defendants and unknown and/or not reasonably accessible to Plaintiff and consumers, on the Product labels where the disclosure could be viewed by Plaintiff and consumers at the point-of-sale.

12. By failing to disclose that the Products contain or likely contain glyphosate and glyphosate is a probable carcinogen and continuing to sell the Products in packages omitting this information, Defendants have and continue to deceive and mislead consumers, including Plaintiff.

13. As a result of Defendants' false and deceptive Product Health Representations, misleading half-truths and material nondisclosures, consumers will continue to purchase Defendants' Products that, unbeknownst to them, contain or likely contain glyphosate.

1  14. Plaintiff brings this action on behalf of himself and other similarly situated consumers who purchased the Products to halt the dissemination of this misleading and deceptive advertising message, correct the misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products. Based on violations of California unfair competition laws (detailed below), Plaintiff seeks declaratory, injunctive, and restitutionary relief for consumers who purchased the Products.

## JURISDICTION AND VENUE

15. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendants.

16. This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in California, including this District. Defendants marketed, promoted, distributed, and sold the Products in California, and Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in this State through their promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

17. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

## PARTIES

18. Plaintiff Morgan Steckler resides in Los Angeles County, California. Throughout the relevant period, Plaintiff Steckler routinely was exposed to, saw, and relied upon Defendants' Product Health Representations by reading the Quaker Old

- 5 -
Class Action Complaint

Fashioned Oats and Quaker Steel Cut Oats Product labels at various stores in the Los Angeles, California area, including Costco and Smart and Final. Plaintiff Steckler purchased the Products for himself and his wife. At all relevant times, Plaintiff Steckler was unaware that the Products contained glyphosate, that glyphosate was a probable carcinogen, or that Defendants could not guarantee they did not contain glyphosate. Had Defendants disclosed on the packages that the Products contained or may contain glyphosate and that glyphosate was a probable carcinogen, Plaintiff Steckler would have seen and read that disclosure and would not have purchased them. As a result, Plaintiff Steckler suffered injury in fact and lost money at the time of purchase. Plaintiff Steckler continues to desire to purchase Quaker Oats products with healthy attributes that do not contain glyphosate, and he would purchase such a product manufactured by Defendants if it were possible to determine prior to purchase whether the Product contained or could contain glyphosate. Indeed, Plaintiff Steckler regularly visits stores such as Costco and Smart and Final, where Defendants' Products are sold, but will be unable to rely upon the Product Health Representations and will not be able to determine if the Products contain glyphosate when deciding whether to purchase the Products in the future.

19. Defendant PepsiCo, Inc. is a North Carolina corporation whose headquarters is located at 700 Anderson Hill Road, Purchase, NY 10577. PepsiCo, Inc. is the parent company of Defendant The Quaker Oats Company, Inc. PepsiCo Inc. manufactures, advertises, markets, distributes, and/or sells the Products to tens of thousands of consumers in California and throughout the United States.

20. Defendant The Quaker Oats Company, Inc. is a New Jersey corporation whose headquarters is located at 700 Anderson Hill Road, Purchase, NY 10577. The Quaker Oats Company, Inc. is a subsidiary of Defendant PepsiCo, Inc. The Quaker Oats Company, Inc. manufactures, advertises, markets, distributes, and/or sells the Products to tens of thousands of consumers in California and throughout the United

States.

## CLASS DEFINITION AND ALLEGATIONS

21.     Plaintiff brings this action on behalf of himself and all other similarly situated consumers pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> **Multi-State Class Action**
> All consumers who, within the applicable statute of limitations period until the date notice is disseminated, purchased the Products in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.[2]
>
> Excluded from this Class are Defendants and their officers, directors, employees and those who purchased the Products for the purpose of resale.

22.     In the alternative to a Multi-State Class, Plaintiff seeks certification of the following California-Only Class:

> **California-Only Class Action**
> All California consumers who within the applicable statute of limitations period until the date notice is disseminated, purchased the Products.
>
> Excluded from this Class are Defendants and their officers, directors and employees, and those who purchased the Products for the purpose of resale.

23.     **Numerosity**. The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Plaintiff is informed and believes that

---

[2] The States in the Multistate Class are limited to those States with similar consumer fraud laws as applied to the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*). These statutes are referred to as "Similar Consumer Fraud Statutes."

the proposed Classes contain thousands of purchasers of the Products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

24. **Existence and Predominance of Common Questions of Law and Fact**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    (a)    whether Defendants' alleged conduct is unlawful;

    (b)    whether the alleged conduct constitutes violations of the laws asserted;

    (c)    whether Defendants engaged in misleading and/or deceptive advertising; and

    (d)    whether Plaintiff and Class members are entitled to appropriate remedies, including restitution and injunctive relief.

25. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Classes because, *inter alia*, all Class members were injured through the uniform misconduct described above. Plaintiff is also advancing the same claims and legal theories on behalf of himself and all Class members.

26. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Classes.

27. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for members of the Classes,

on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

28. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Classes, on grounds generally applicable to the entire Classes, to enjoin and prevent Defendants from engaging in the acts described and requiring Defendants to provide full restitution to Plaintiff and Class members.

29. Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members.

30. Unless an injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Classes and the general public will continue to be deceived and not know whether the Product Health Representations are true or if the Products continue to contain glyphosate.

**COUNT I**
**Violation of Business & Professions Code §17200, *et seq.***
**and Similar Consumer Fraud Statutes, *supra* note 2**
**(On Behalf of the Multi-State or California-Only Class)**

31. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

32. Plaintiff brings this claim individually and on behalf of the Classes.

33. As alleged herein, Plaintiff has suffered injury in fact and lost money or

property at the time of purchase as a result of Defendants' conduct because he purchased Defendants' Products in reliance on Defendants' Product Health Representations. Had Defendants disclosed on the packages that the Products contained or may contain the probable carcinogen glyphosate, Plaintiff would have seen and read that disclosure and would not have purchased the Products.

34. The Unfair Competition Law, Business & Professions Code §17200, *et seq*. ("UCL") prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. The Similar Consumer Fraud Statutes likewise prohibit the use of unfair or deceptive practices in the course of trade or commerce, and are to be liberally construed.

35. In the course of conducting business, Defendants committed "unlawful" business practices by, *inter alia*, making the Product Health Representations, which are false and deceptive representations and misleading half-truths, and the material omissions (which also constitute advertising within the meaning of §17200) regarding the Products' labeling, as set forth more fully herein, and violating Civil Code §§ 1552, 1573, 1709, and 1711, the California Legal Remedies Act, Civil Code § 1750, *et seq.*, Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*, the Similar Consumer Fraud Statutes, and the common law.

36. Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

37. In the course of conducting business, Defendants committed "unfair" business acts or practices by, *inter alia*, making the Product Health Representations, which are false and deceptive representations and misleading half-truths, and material omissions (which also constitute advertising within the meaning of § 17200) regarding the Products' labeling, as set forth more fully herein. There is no societal benefit from false advertising, only harm. While Plaintiff and the public at large were

and continue to be harmed, Defendants have been unjustly enriched by their misleading half-truths and material omissions. Because the utility of Defendants' conduct (zero) is outweighed by the gravity of harm to Plaintiff, consumers, and the competitive market, Defendants' conduct is "unfair" having offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to the public at large.

38. There were reasonable available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

39. In the course of conducting business, Defendants committed "fraudulent business act[s] or practices" and deceptive or misleading advertising by, *inter alia*, making the Product Health Representations, which are false and deceptive representations and misleading half-truths, and the material omissions (which also constitutes advertising within the meaning of §17200) regarding the Products as set forth more fully herein.

40. Defendants' actions, claims, and misleading statements, as more fully set forth above, are misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq*. and the Similar Consumer Fraud Statutes.

41. Plaintiff relied on Defendants' Product Health Representations and was in fact injured as a result of those false and deceptive representations and misleading half-truths and material omissions. Plaintiff has suffered injury in fact and lost money as a result of his purchases of Defendants' Products.

42. Unless restrained and enjoined, Defendants will continue to engage in the above described conduct. Accordingly, injunctive relief is appropriate.

43. Plaintiff, on behalf of himself, all others similarly situated, and the general public, seeks declaratory relief and an injunction prohibiting Defendants from continuing such practices, restitution of all money obtained from Plaintiff and

the members of the Classes collected as a result of unfair competition, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203 and the Similar Consumer Fraud Statutes.

**COUNT II**
**Violations of the Consumers Legal Remedies Act – Civil Code § 1750 *et seq.***
**(On Behalf of the California-Only Class)**

44. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

45. Plaintiff brings this claim individually and on behalf of the California-Only Class.

46. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. (the "Act").

47. Plaintiff is a consumer as defined by California Civil Code § 1761(d). The Products are "goods" within the meaning of the Act.

48. Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the California-Only Class which were intended to result in, and did result in, the sale of the Products:

> (5) Representing that [the Products have] . . . characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .
>
> \* \* \*
>
> (7) Representing that [the Products] are of a particular standard, quality, or grade … if they are of another.

49. Defendants violated the Act by making the Product Health Representations, which are false and deceptive representations and misleading half-truths, and the material omissions, as described above, when they knew or should have known that the false and deceptive representations and misleading half-truths

and material omissions were misleading and deceptive.

50. Pursuant to California Civil Code § 1782(d), Plaintiff and the California-Only Class seek a Court Order declaring Defendants to be in violation of the CLRA, enjoining the above-described wrongful acts and practices of Defendants, and ordering restitution and disgorgement.

51. Pursuant to § 1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.  A copy of the letter is attached hereto as Exhibit B.

52. If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages as appropriate.

53. Pursuant to § 1780 (d) of the Act, attached hereto as Exhibit C is the affidavit showing that this action has been commenced in the proper forum.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Classes as requested herein;

B. Issuing an order declaring that Defendants are in violation of the UCL and CLRA;

C. Enjoining Defendants' conduct;

D. Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

E. Awarding attorneys' fees and costs; and

F. Providing such further relief as may be just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of his claims by jury to the extent authorized by law.

Dated: October 26, 2018

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

/s/*Patricia N. Syverson*
Patricia N. Syverson (203111)
Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Elaine A. Ryan (*To Be Admitted Pro Hac Vice*)
Carrie A. Laliberte (*To Be Admitted Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

SIPRUT PC
Stewart M. Weltman (*To Be Admitted Pro Hac Vice*)
Todd L. McLawhorn (*To Be Admitted Pro Hac Vice*)
Michael Chang (*To Be Admitted Pro Hac Vice*)
17 North State Street
Chicago, Illinois 60602
sweltman@siprut.com
tmclawhorn@siprut.com
mchang@siprut.com
Telephone: (312) 236-0000

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 26th day of October 2018.

> */s/Patricia N. Syverson*
> Patricia N. Syverson